## Central Union Telephone Company v. William T. Gibbons, Administrator.

1. VERDICT—*when set aside as against the evidence.* Where there is no evidence tending to establish the negligence charged in the declaration, a verdict will be set aside.

Action on the case for death caused by alleged wrongful act. Error to the Circuit Court of Macon County; the Hon. WILLIAM

C. Johns, Judge, presiding. Heard in this court at the May term, 1905. Reversed, with finding of fact. Opinion filed March 20, 1906.

W. B. Mann, for plaintiff in error.

Willard J. Dickinson and I. A. Buckingham, for defendant in error.

Mr. Justice Baume delivered the opinion of the court.

This writ of error is prosecuted to reverse a judgment of the Circuit Court of Macon county, in favor of defendant in error for $1,999, for negligently causing the death of his intestate, Thomas Gibbons.

The declaration alleges in substance that plaintiff in error negligently placed or permitted to be placed upon one of its telephone poles an uninsulated electric light wire; that the deceased, a lineman in its employ, was directed by plaintiff in error to climb said pole and dead end a telephone wire on one of the cross-arms; that while so engaged in the line of his duty, and while in the exercise of due care for his own safety, deceased came into contact with said electric light wire carrying a current of 2,000 volts, and was thereby shocked, so that he fell to the ground and was killed.

The telephone pole belonging to plaintiff in error is in an alley between North Water and North Warren streets in the city of Decatur. It is 30 to 35 feet in height, and is provided with iron stirrups or steps driven into its east and west sides at a distance apart on each side of three feet, making a distance of 18 inches between the steps. At a distance of about 25 feet from the ground an iron bracket is attached to the west side of the pole, and to the glass insulator upon this bracket the electric light wire in question is suspended. Above the bracket there are five or six cross-arms, six feet in length, fastened to the pole at a distance of about 14 inches apart. These cross-arms are provided with wooden pins 3 or 4 inches in length, having glass insulators, upon which the telephone wires are suspended. The distance from the lower cross-arm to the iron bracket which carries the electric wire is 4 feet 8 inches. The tele-

phone pole in question accommodated the main toll line wires to Bloomington, Aurora, Clinton and other places, and the uncontradicted evidence tends to show that when the operator at the central office rang out upon one of these lines a current of 50 to 300 volts was created, and that such current is sufficient to shock a person to the extent of causing him to fall from a pole. At the time of the accident, and for some months prior thereto, the electric light wire was practically uninsulated and exposed for a space of several inches on either side of the bracket upon which it was suspended.

On March 20, 1903, the deceased, Thomas Gibbons, was in the employ of plaintiff in error as a lineman and was ordered by the foreman in charge of the work to dead end one of the telephone wires on a cross-arm of the pole. Deceased knew the electric light wire was uninsulated and that it carried a deadly current, and was, upon that day, warned by the foreman to be careful about the electric wire. He ascended the pole by means of the iron steps and was at work on the lower cross-arm when he suddenly fell to the ground and sustained a fracture of the skull, resulting in his death. The evidence tends to show that the deceased when found had a burn on the two smaller toes on one foot; that the little finger of his left hand was burned to the bone, and the next finger was slightly scorched. The evidence further tends to show that it was raining on the day of the accident, and that the pole was wet, rendering the conditions most favorable for the grounding of an electric current.

Counsel for defendant in error say in their brief, "the theory of plaintiff was that when deceased stood on the step on the west side of the pole at or near the bracket holding the light wire, he raised his left foot to the next step above on the east side, and in raising himself on that step, the toe of his right foot touched the light wire; that he was thereby shocked and fell to his death." There is no evidence in the record sustaining this theory. But two witnesses saw the deceased at the time he fell from the pole. Martin Sanders testified as follows: "I noticed him (deceased)

when he started to fall; he was up in the wires; probably half of his body was up in the wires; his body was half way above the lower cross-arm and he was standing straight up; I couldn't tell from where I was, how far his feet were below the lower cross-arm; I don't suppose his feet could have possibly been more than two and a half feet below the lowest cross-arm; it looked to me like his feet were above the bracket when I saw him; I couldn't tell exactly from where I was. At the time I saw him among the wires it seemed to me like he was standing still and then fell back; I don't think his feet were near the electric light wire."

Samuel Jay testified: "I was first attracted by hearing a groan, and immediately looked, at which I saw somebody up that pole upon which there were six cross-arms and upon which were a good many wires. At the time I was attracted by the groan the man did not do anything but stand still for two or three seconds, then he fell backwards. At the time of falling he was on the north side of the pole, and facing a little to the south and east, almost directly south. He was up to the lower cross-arm and his right foot was nearer to the cross-arm than the electric light wire, and he was in that position from the time I first saw him until he fell back. His right foot was up and his body was scrooched up there in a position, his head being about even with the third cross-arm. He was in a hanging position and appeared to be hanging there. I couldn't tell whether or not he had hold of anything, and without warning he fell back. I saw no change in his position until he fell back. I was right at him."

It is, therefore, established by the evidence that at the time the deceased fell from the pole, half of his body was above the lower cross-arm and half below that cross-arm. He was 5 feet 7 or 8 inches in height. The electric light wire was 4 feet 8 inches below the lower cross-arm. If only one-half, or 2 feet 9 or 10 inches of the body of deceased was below the cross-arm, it is manifest that he was nearly two feet above the electric light wire when he received the shock which caused his fall, and that such shock could not

have resulted by contact with that wire. The only possible explanation of the accident, under the evidence in the record, is, that the deceased was shocked by contact with a telephone toll line wire while the central operator was ringing up a long distance circuit, and that while falling to the ground he came in contact with the electric light wire.

W. B. Bourke, a witness for plaintiff in error, testified as follows: "In operating a telephone business it is necessary to have connection with a dynamo. The wires are charged when they ring on the lines wherever a connection is made between the office and any outside point. Whenever a person being among telephone wires had hold of a bare wire that reached down to the ground, or made a ground, and a person should ring, a shock would be received, depending in strength upon the dynamo, and on a damp day the shock would knock him down. The voltage is from 50 to 300 or 400 when the telephone bell is ringing. Fifty volts are required in ringing local circuits, but in ringing a distance it takes more."

There being no evidence in the record tending to show that the shock which caused the deceased to fall, resulted from contact with the electric light wire, defendant in error has wholly failed to establish that the negligence of plaintiff in error, alleged in the declaration or any count thereof, was the proximate cause of the death of his intestate.

The judgment is reversed, with a finding of fact to be incorporated in the judgment of this court.

*Reversed, with finding of fact.*

FINDING OF FACT: We find that the negligence of plaintiff in error, alleged in the declaration, was not the proximate cause of the death of Thomas Gibbons.